[Criminal No. 564. Filed December 22, 1923.]

[221 Pac. 232.]

## KATHERINE ENCINAS, Appellant, v. STATE, Respondent.

1. JURY—CHALLENGE FOR CAUSE SHOULD SPECIFY GROUND.—A challenge for cause should state the specific ground.

2. CRIMINAL LAW—DISALLOWANCE OF CHALLENGES FOR CAUSE HELD NOT GROUND FOR REVERSAL.—Where eleven of the jurors selected were not challenged by defendant, and the record did not show that the twelfth juror was in fact disqualified, the disallowance of challenges for cause requiring defendant to exercise peremptory challenges *held* not ground for reversal.

3. Criminal Law—That Witness Called on Rebuttal was not Put Under the Rule Held not Ground for Reversal.—Where the state in good faith could not have foreseen that witness would be called on rebuttal, the fact that the witness so called was not put under the rule was not ground for reversal.

4. Homicide — Testimony as to Defendant's Threat Directed Against Deceased's Wife Held Admissible on Motive.—In murder prosecution, testimony as to defendant's statement to witness that deceased's wife had accused defendant of hurting deceased's medical practice, and that deceased's wife was "trying to give him some trouble, and she will pay for it some day," *held* admissible *on question of motive.*

5. Homicide — That Deceased Offered to Assist Defendant's Wife to Get Divorce Admissible.—In murder prosecution, testimony of deceased's wife that defendant had offered to assist her in procuring a divorce from the deceased *held* admissible to show interest and motive.

6. Criminal Law—Admission on Rebuttal of Testimony in Chief not Ground for Reversal.—In murder prosecution, testimony of deceased's wife that defendant had offered to assist the wife in getting a divorce from deceased, though admitted on rebuttal was not ground for reversal.

7. Criminal Law—Contents of Clipping Held Admissible to Rebut Testimony in Chief.—In murder prosecution, in which the defendant claimed to have killed the deceased in self-defense, following dispute over newspaper clipping in defendant's possession, for which deceased had offered defendant a large sum of money, and in which the defendant had testified that the clipping had been retained by deceased's wife, and related to an escapade of the deceased with a certain woman, testimony of deceased's wife as to the contents of the clipping *held* admissible to rebut the testimony of the defendant.

8. Homicide—Danger must have Been Apparent to Reasonable Man.—Under Penal Code of 1913, section 181, apparent danger to justify killing in self-defense must have been such that a reasonable man would have thought himself in danger.

9. Criminal Law—Jury's Determination on Facts Conclusive on Appeal.—The Supreme Court is bound by jury's determination of controverted questions of fact.

---

8. Determination as to danger and necessity to kill in self-defense, see note in 3 L. R. A. (N. S.) 535.

Doctrine of self-defense set up by accused who began the conflict, see note in 45 L. R. A. 687.

See 16 C. J. 845, 867; 17 C. J. 264, 287, 294, 306; 30 C. J. 62, 179, 191; 24 Cyc. 336.

APPEAL from a judgment of the Superior Court of the County of Pinal. Joseph S. Jenckes, Judge. Affirmed.

Mr. Greg Garcia, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. A. R. Lynch, Mr. Earl Anderson and Mr. Ernest W. McFarland, Assistant Attorneys General, for the State.

ROSS, J.—The defendant, upon a charge of murdering Dr. Wallace G. Randell, was convicted and sentenced to life imprisonment. She appeals from the judgment of conviction and the order overruling her motion for a new trial.

Her first assignment of error is the order overruling her challenges for cause to the following trial jurors: Ed Goldberg, R. B. Hancock, G. G. Martin, O. H. Bolt, George Boring, J. M. Smith, A. L. McCann, D. C. Hollinger, J. P. Shepard, R. R. Rogers and George Saiger. This will be treated as eleven assignments, although it appears as one. The challenges where made were individual, and in each case upon a different state of facts brought out on the juror's *voir dire.* This is the way defendant looked at the assignment, for she has not argued all the challenges together. She has taken them up singly, or such of them as she deemed worthy of argument, and pointed out her reasons for making each challenge, together with arguments and authorities in support thereof. She has not shown or attempted to show (either in brief or oral argument) wherein R. B. Hancock, G. G. Martin, George Boring, D. C. Hollinger, J. P. Shepard or George Saiger were for any reason whatever disqualified to act in her case. We therefore shall treat so much of this assignment as is directed to the order overruling chal-

lenges to these jurors as abandoned, and examine those rulings only that defendant has seen fit to insist upon in brief and oral argument. We do this the more readily because we feel certain that the learned counsel who represents defendant on this appeal has not overlooked anything that could or might reasonably aid his unfortunate client.

The challenges disallowed and urged as erroneous were those to the following jurors: Ed Goldberg, O. H. Bolt, J. M. Smith, A. L. McCann and R. R. Rogers. None of these was sworn or served as a juror in the case. They were all peremptorily challenged and stricken by the defendant. It is contended defendant was wrongfully compelled to exercise five of her ten challenges upon persons who should have been excused upon her challenge for cause, and that her legal or statutory rights were curtailed or taken away from her to that extent. We have carefully looked into the qualifications of the twelve jurors who were sworn and served and find them all—as the questions and answers on their respective *voir dire* indicate—free from any disqualification for any cause stated in the statute. Eleven of them were in that respect satisfactory to defendant, or at least were not challenged by her. One of the jurors, G. G. Martin, was challenged for cause, but the overruling of the challenge is not urged here as error, and if it were it would be without merit, as there is no fact in the record to sustain any statutory ground of challenge. Another thing, the challenge was in this language: ''I challenge juror for cause.'' This challenge presented no issue to the court. To be effective the specific ground of challenge should have been stated. *Booth* v. *Territory,* 9 Ariz. 204, 80 Pac. 354; *Leigh* v. *Territory*, 10 Ariz. 129, 85 Pac. 948; *People* v. *Owens,* 123 Cal. 483, 56 Pac. 251. It is possible the challenge, taken in connection with the trend of the examination of the juror on his *voir dire* would in-

dicate the particular ground of challenge, and if as to this juror the record showed that he was biased or prejudiced we might think it necessary to hold the challenge sufficient, but the record does not so show.

We conclude the facts of this case, for all practical purposes, places it in the same class and subjects it to the same rule as announed by the California courts, from which state our Penal Code, including part governing defendant's rights of challenge to individual jurors, was largely taken. See Cal. Pen. Code, §§ 1073–1088. The rule there is that the order overruling challenge for cause must amount to prejudicial error in order to require reversal, and is very well stated in *People* v. *Johnson,* 57 Cal. App. 391, 207 Pac. 281.

"Appellant also complains that the trial court erred in disallowing his challenge for cause, interposed to one of the jurors on the ground of bias. The juror was not sworn and did not serve as such on the trial, having been subsequently excused by appellant on a peremptory challenge. It appears from the record that appellant exhausted his ten peremptory challenges, but it does not appear that he had occasion or desired to exercise an additional peremptory challenge. There is nothing to indicate that any of the jurors who served were objectionable to appellant, or that each and all of the twelve jurors finally accepted and sworn were not entirely satisfactory to him. Under these circumstances it is unnecessary to determine whether or not the ruling was erroneous, as it did not amount to prejudicial error and would not warrant a reversal. *People* v. *Kromphold,* 172 Cal. 512, 519, 520, 157 Pac. 599; *People* v. *Schafer,* 161 Cal. 573, 576, 119 Pac. 920."

This rule is both the constitutional and statutory rule in this jurisdiction. Section 22, art. 6, Const.; section 1170, Pen. Code.

Defendant exercised all of her ten peremptory challenges. Five were used on jurors that she had un-

successfully objected to for cause. Just why one
of the remaining five was not employed on juror
Martin is not apparent. Defendant might have
thought him less objectionable than any of the five
stricken, and against whom she had interposed no
objection for cause, and if the record showed Martin
was in fact disqualified, and that a proper challenge
had been made, the court might feel bound to hold
the order disallowing such challenge error. In *People*
v. *Kromphold,* 172 Cal. 512, 157 Pac. 599, *supra,* the
court quotes from *People* v. *Schafer,* 161 Cal. 573, 119
Pac. 920, *supra,* as follows:

" . . . The important thing is that it does not
appear that an objectionable juror was forced upon
the defendant."

We think that is clearly the situation here, because
Martin was not disqualified or legally objectionable.
Even though the court may have erred in disallowing
the five, or some of the five, challenges made by de-
fendant for cause and urged on this appeal as erro-
neous, the record disclosing that the twelve jurors
who served were not disqualified, such disallowances
"did not amount to prejudicial error, and would not
warrant a reversal."

Upon the request of defendant the witnesses were
put under the rule or, as Professor Wigmore would
say, sequestered during the taking of testimony.
Mrs. Margaret Randell, wife of the deceased, was not
listed as one of the prosecution's witnesses, and was
not used as such in chief. After the defendant had
testified in her own behalf, Mrs. Randell was called
for the purpose (as stated by the county attorney) of
rebutting defendant's testimony. Defendant objected
to her testifying on the ground of the nonobservance
of the court's order. The county attorney explained
to the court that it could not have been foreseen that
Mrs. Randell would be used or needed as a witness,

and that hence she was not placed under the rule, and that her testimony was being offered to rebut that of defendant.

It may be assumed, in passing upon the question thus raised, that both the witness and the prosecution acted in good faith, and with no design to secure 'any undue advantage of the defendant. It is not like a case where the witness who has been placed under the rule has knowingly ignored it, or where the party using the witness has by trick or design avoided the rule or permitted the person to be present during the taking of testimony, knowing all the while he would be called as a witness. If it were we might feel compelled under the authorities to hold the ruling on this objection to be error. 3 Wigmore on Evidence, §§ 1837–1842; 26 R. C. L. 1058, §§ 65, 66, 67. In the circumstances the ruling appears to be correct.

The next complaint is of the admission of the testimony of Charles T. Henderson concerning a conversation he had with defendant, some six months before the killing of Dr. Randell, in which defendant stated Mrs. Randell had accused her (defendant) "with hurting the Doctor's practice," and in which defendant said of Mrs. Randell, "She is trying to give me some trouble and she will pay for it some day."

The ground of objection to this testimony was that it had nothing to do with the deceased, but was a threat directed solely at another person. We think it highly competent as bearing upon the question of motive. The most effective as well as costly "payment" by Mrs. Randell would be the taking of her husband, by whatever means and especially by violence.

It seems that in 1918 Dr. Randell and Mrs. Randell had become somewhat estranged from each other, and this was known by the defendant; the fact being developed upon her cross-examination. Mrs. Randell

was asked about the same matter, and over the objection of defendant was permitted to tell of the estrangement, and about a visit to her by defendant, and the purpose of such visit, as disclosed by what was said by defendant. Mrs. Randell testified the defendant on this visit said to her: " 'Mrs. Randell, I will give you the papers—everything for proof, so that you can get your divorce.' I said, 'I don't want the papers, I have no use for them, and doctor does not want a divorce; that is all over.' " That thereupon defendant said: "You are a baby—do you believe what he says?"

The grounds of objection to this testimony were that the witness, notwithstanding the rule, had remained in the courtroom and listened to all the testimony, and that said testimony was not rebuttal but new matter in its entirety. The first objection is disposed of in an earlier part of the opinion. The second goes to the order of the introduction of the testimony. It is obvious that this testimony was competent for the purpose of showing interest and motive, but would more properly have been admitted as a part of the case in chief. It was irregular for the court to admit it as rebuttal, for such it was not. The irregularity, however, was not of a prejudicial nature, and consequently not a ground of reversal.

"The courts are agreed . . . that whether there shall be a departure from the usual order of proof rests largely in the discretion of the trial court, and that an appellate court will interfere only where there is an abuse of discretion." 26 R. C. L. 1037, § 42.

The defendant had testified that she killed Dr. Randell in self-defense; that she had in her possession a letter and some souvenirs, consisting of handkerchiefs and hairpins, the doctor wanted; that he offered her $2,000 for them, which she refused; and

that he then took up a pair of scissors and started toward her in a threatening manner, stating that he would kill her, whereupon she shot him. The "letter" referred to was not in fact a letter but a clipping that had been cut out of a newspaper—the defendant said the Los Angeles "Examiner." Besides showing it to the deceased, defendant had also shown it to Mrs. Randell. On her examination Mrs. Randell was asked the contents of this clipping. She explained that it was a question and answer, the question, in substance, being, "What would you do if your husband were untrue to you?" and the answer, in substance, being, "I would go brazenly (bravely) on and make the best of things, and that those things by and by righted themselves." Witness further stated this article was signed "M. T. R.," which happened to be her initials, and was dated "Hyland Park, Chicago." She denied having anything to do with its composition or publication. Defendant had testified to the contents of clipping with an entirely different version. According to her statement it was a history of an escapade of Dr. Randell's with one Ione Powell, and was written by Mrs. Randell.

The objection to Mrs. Randell's testimony was general, and that it was not rebuttal. Its admission over this objection is assigned as error. Mrs. Randell's testimony clearly rebutted that of defendant, and was properly admitted for that purpose.

The defendant complains of the court's instruction in regard to self-defense. After informing the jury that defendant had a right to defend herself against actual or apparent danger, in ample and correct form, as conceded by defendant, the court further said:

"The defendant is not necessarily justified because she actually believed that she was in imminent danger. When the danger is only apparent and not actual and real, the question is, Would a reasonable

man under the circumstances be justified in such be-
lief?''

No authority is cited that condemns this instruc-
tion, and we are unable to see wherein it is wrong.
Section 181 of the Penal Code of 1913 very explicitly
states the rule as contained in the instruction. It
reads as follows:

''A bare fear of the commission of any of the
offenses mentioned in subdivisions two and three
of the preceding section, to prevent which, homicide
may be lawfully committed, is not sufficient to justify
it. But the circumstances must be sufficient to excite
the fears of a reasonable person, and the party killing
must have acted under the influence of such fears
alone.''

See, also, *Hicklin* v. *Territory,* 9 Ariz. 184, 80 Pac.
340; *Bryant* v. *Territory,* 12 Ariz. 165, 100 Pac. 455.

Defendant further complains because the court
refused to give her requested instruction covering
self-defense. The court's instructions on the right
of self-defense were as full and complete and as favor-
able as the defendant could ask, and covered every
ground in the requested instruction. The requested
instruction was at fault in leaving out the statutory
standard of fear, as contained in paragraph 181,
*supra,* and in making the fear of the defendant the
standard, rather than that of a reasonable person.
The court very properly refused such requested in-
struction.

Finally, it is contended the verdict is not supported
by the evidence. We will not undertake to set out
the evidence or analyze it, as to do so would serve
no useful purpose. As usual in such cases, the tes-
timony is not all one way. It would be difficult, how-
ever, to say wherein the state's case was not made out
or wherein it was overcome or defeated, unless we
should accept defendant's testimony as true and
that of the prosecution as false. It was solely for

26 Ariz.—3

the jury to determine that controverted question, and we are bound by that determination.

The judgment is affirmed.

McALISTER, C. J., and LYMAN, J., concur.